UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTEZ DEJUAN REYNOLDS,

        Petitioner,

v.

        Case No. 07-12966
        Honorable David M. Lawson

CINDI CURTIN, Warden,

        Respondent.

_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      Petitioner Martez Dejuan Reynolds was convicted in a Michigan court of second-degree murder and various firearm offenses in the shooting death of James Winbush during a dice game. He presently is serving his concurrent prison sentences of thirty to fifty years for murder, one to five years for being a felon in possession of a firearm, and a two-year consecutive sentence for possession of a firearm in the commission of a felony, all at the Carson City Correctional Facility in Carson City, Michigan. He has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging these convictions and sentences on the grounds that there was insufficient evidence presented at the preliminary examination to bind him over to the circuit court for trial, there was insufficient evidence to convict him of these offenses, and that the prosecutor committed various forms of misconduct. The respondent has filed an answer to the petition contending that the petitioner's claims are either procedurally defaulted or lack merit. The Court finds no merit in the petitioner's claims and therefore will deny the petition.

I.

The shooting of James Winbush occurred on February 22, 2004 in the city of Detroit. The Michigan Court of Appeals summarized the facts established at trial, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd*, 41 F. App'x 730 (6th Cir. 2002), as follows:

> Defendant's convictions arose from the shooting of James Winbush at approximately 11 a.m. on February 22, 2004. That morning, a group of men, including Mr. Winbush, defendant, and defendant's best friend, Harrison Humphries, gathered on the porch of an abandoned house on Annin Street in the city of Detroit to play a game of dice. At some point, Andre Harrell brought an additional pair of dice to Mr. Winbush. Mr. Harrell testified that he recognized several men on the porch, including the defendant and Mr. Humphries. Mr. Harrell did not remain at the game; he returned to his home, which was two houses away.
>
> Shortly after Mr. Harrell left, defendant and Mr. Winbush began arguing over the dice game. Mr. Humphries testified that he attempted to stop this disagreement, but Mr. Winbush warned him not to interfere. FN4. [FN4: Mr. Humphries specifically denied that the dispute between Mr. Winbush and the defendant became physical.] Mr. Humphries subsequently decided to leave. As he walked toward the street, he heard approximately ten gunshots fired behind him. The men scattered, running away from the scene. Mr. Humphries stated that, as he ran away, the defendant ran in the same direction, ultimately passing him. FN5. [FN5: Mr. Harrell testified that defendant and Mr. Humphries appeared to be running away together.] Mr. Harrell testified that he heard six to eight gunshots while inside his house. He came outside and noticed everyone running away from the abandoned house. Mr. Harrell also noticed that defendant was holding a small, black handgun at that time. He further testified that he did not see any one else carrying a gun. Although Mr. Harrell did not contact the police or summon an ambulance, FN6 [FN6: Mr. Harrell called Mr. Winbush's sister, who, in turn, contacted the proper authorities.] he waited with Mr. Winbush and administered CPR until help arrived. Mr. Winbush was pronounced dead upon arrival at the hospital. A subsequent autopsy revealed that he had been shot nine times.
>
> While several witnesses were present during the shooting, no one who actually saw this incident volunteered any information to the police. FN7. [FN7: The officers only located one other individual who participated in the dice game – Leonard Glover. The officers testified that Mr. Glover was nervous and reluctant to provide any information regarding the shooting. The prosecution was unable to locate Mr. Glover at the time of defendant's trial and, therefore, he was not called as a witness

in this case.] When questioned by investigating officers on the scene, Mr. Harrell implicated both defendant and Mr. Humphries in the shooting. The following day, Mr. Humphries was taken into custody and questioned. He originally told the police that a fictional person named "T-Dot" shot Mr. Winbush. He later recanted his statement and implicated defendant in the shooting. Six days after the shooting, an unidentified man voluntarily came into Detroit's 12th Precinct and provided information leading to defendant's ultimate arrest. Although defendant later denied ever being on Annin Street, he asked the arresting officers if the charges arose from the murder at the dice game. On the witness stand, defendant asserted that he was with his girlfriend and her sister at the time of the shooting. He further claimed that he could not have run from the scene, as he had suffered severe leg injuries in a shooting seven months before the current incident. Defendant alleged that Mr. Humphries implicated him in the shooting because he was also a suspect in the investigation.

*People v. Reynolds,* No. 257105, 2006 WL 305402, at *1-2 (Mich. Ct. App. Feb. 9, 2006) (unpublished).

The jury in the Wayne County, Michigan circuit court found the petitioner guilty of second-degree murder, Mich. Comp. Laws § 750.317, being felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm in the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. Following his convictions and sentencing, the petitioner filed a direct appeal in the Michigan Court of Appeals, arguing that the evidence was insufficient and the prosecutor improperly forced him to comment on the credibility of witnesses against him and argued facts not in the record. The court of appeals affirmed his convictions and sentence, and on June 26, 2006, the Michigan Supreme Court denied leave to appeal in a standard order. *People v. Reynolds*, 475 Mich. 889, 715 N.W.2d 897 (2006). The petitioner timely filed his federal habeas petition, asserting the following grounds for relief:

> I. The district court abused its discretion by binding petitioner over as charged.
>
> II. Petitioner's convictions of second-degree murder and felony firearm must be reversed because the prosecution failed to present legally sufficient evidence of second-degree murder and that he committed the offense.

III. Petitioner's convictions of possession of a weapon by a convicted felon and felony firearm must be reversed because they are not supported by evidence to establish his guilt beyond a reasonable doubt.

IV. Petitioner was deprived a fair and impartial trial due to prosecutorial misconduct.

Memo of Law in Supp. of Pet. [dkt. # 1], at ii.

The respondent opposes the petition, contending that the petitioner's claims are either procedurally defaulted or lack merit and therefore do not warrant habeas relief.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant

to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court has "explained that an unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. This distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, ---,130 S. Ct. 1855, 1862, 1864-65 (2010) (finding that the state court's rapid declaration of a

mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached") (internal quotation marks and citations omitted); *see also Knowles v. Mirzayance*, --- U.S. ---, ---, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme "Court has held on numerous occasions that it is not "'an unreasonable application of clearly established Federal law'" for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

First, the petitioner argues that there was insufficient evidence presented at the preliminary examination to support the examining magistrate's decision to bind him over for trial. This claim is not cognizable on habeas review because it raises a matter of state law only. It is well established that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Louis v. Jeffers*, 497 U.S. 764, 780 (1990)). The Sixth Circuit has held that "[i]n a habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 18, 22-23 (6th Cir. 1981).

The purpose of a preliminary examination is to determine whether probable cause exists to justify continued detention of a person charged by complaint or information. *See Gerstein v. Pugh*, 420 U.S. 103, 118 (1975). The abridgement of that right may undermine the validity of continued pretrial detention, but not the ensuing conviction. Under Michigan law, any error in the sufficiency of the proofs at preliminary examination is considered harmless if there is sufficient evidence to convict at trial. *See People v. Hall*, 435 Mich. 599, 602-03, 460 N.W.2d 520, 522 (1990). So it is under federal law as well. *See United States v. Mechanik*, 475 U.S. 66, 73 (1986). There is no federal constitutional right to a preliminary examination. *See Gerstein*, 420 U.S. at 123 & 125 n.26 (1975); *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965). The petitioner's claim that the prosecutor presented insufficient evidence at the preliminary examination to bind him over for trial raises only a matter of state law and procedure that cannot form a basis for federal habeas relief. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Scott v. Bock*, 241 F. Supp. 2d 780, 793 (E.D. Mich. 2003). Although the Constitution does prohibit any defendant from being convicted of a crime on the basis of evidence which no reasonable juror could accept, *see Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979), the sufficiency of a preliminary hearing is not a matter of federal concern.

B.

The petitioner's second and third claims challenge the sufficiency of the evidence on the respective counts of conviction. Claim two attacks the second-degree murder and felony firearm convictions on the ground that there was no evidence that the petitioner was the shooter or that he intended to kill James Winbush. Claim three attacks the felon in possession conviction on the basis of the insufficiency of the stipulation regarding the petitioner's past record of convictions.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The standard of review for a sufficiency of the evidence challenge must focus on whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Id.* at 788. Accordingly, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Id.* at 788-89.

The petitioner's argument that the prosecution failed to present sufficient evidence to establish that he was the person who shot the victim was rejected on the merits by the Michigan Court of Appeals. That court observed that the petitioner and the victim had been seen arguing only moments before shots were fired, and following the shooting, the petitioner was seen running away from the abandoned house where the shooting had taken place carrying a handgun. The state court concluded that this evidence could allow a jury reasonably to infer that the petitioner was the person who shot the victim. *Reynolds*, No. 257105, Mich. Ct. App. slip. op. at *3.

That decision was not an unreasonable application of *Jackson*. Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime. *Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002). The identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *see also Scott v. Perini*, 662 F.2d 428, 434-35 (6th Cir. 1981). In this case, testimony established that the petitioner was seen arguing with the victim only moments before the shooting and running from the murder scene with a handgun in his hands following the shooting. No one else was seen fleeing the scene with a handgun. The petitioner's defense was that he was not even there, but several witnesses contradicted that version of the events; and although the petitioner denied being present at the dice game, when arrested by the police, the petitioner asked the arresting officers if the charges arose from the murder at the dice game. When viewed in a light most favorable to the prosecution, the circumstantial evidence in this case was sufficient to permit a rational jury to conclude beyond a reasonable doubt that the petitioner was the shooter. The petitioner is not entitled to habeas relief on the ground that the evidence does not prove he shot Mr. Winbush.

The petitioner also challenges his murder conviction arguing lack of evidence to prove malice. This argument is a tough sell in this case, where the victim was shot nine times with a firearm. Under Michigan law, malice, as an element of murder, consists of the intent to kill, the intent to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of actor's behavior is to cause death or great bodily harm. *People v. Aaron*, 409 Mich. 672, 728, 299 N.W.2d 304, 326 (1980). The offense of second-degree murder "does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences." *People v. Mayhew*, 236 Mich. App. 112, 125, 600 N. W. 2d 370, 379 (1999).

Malice may be inferred from the use of a firearm. *See People v. Fletcher*, 260 Mich. App. 531, 562, 679 N.W.2d 127, 146 (2004).

Nonetheless, the petitioner argues that at best, the evidence presented at trial established that he shot the victim in a heat of passion or sudden provocation as a result of his argument with the victim over the dice game. In rejecting this claim, the Michigan Court of Appeals concluded that it was not unreasonable for a jury to find that the petitioner acted with malice when he shot the victim nine times following an argument regarding a dice game. *Reynolds*, No. 257105, Mich. Ct. App. slip. op. at *3. The court also found it significant that the petitioner never requested a manslaughter instruction.

Under Michigan law, a conviction for second-degree murder requires proof of: (1) a death, (2) caused by an act of the defendant, (3) while the defendant had the intent to kill, the intent to cause great bodily harm, or the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm, and (4) without justification or excuse. *People v. Bailey*, 451 Mich. 657, 669, 549 N.W.2d 325, 331 (1996); *see also People v. Aldrich*, 246 Mich. App. 101, 123, 631 N.W.2d 67, 80 (2001). Manslaughter under Michigan law consists of (1) a killing in the heat of passion; (2) where the passion was caused by an adequate provocation; and (3) where there was no lapse of time during which a reasonable person could control his passions. *People v. Pouncey*, 437 Mich. 382, 388, 471 N.W.2d 346, 350 (1991). The degree of provocation required must cause a reasonable person to lose control and act out of passion rather than reason. *People v. Tierney*, 266 Mich. App. 687, 714-15, 703 N.W.2d 204, 223 (2005). Homicide caused by passion without an adequate provocation is considered murder in the second degree. *See People v. Stinson*, 58 Mich. App. 243, 247, 227 N.W. 2d 303, 306 (1975).

The petitioner's argument fails here because there was no evidence presented at trial that there had been any provocation that caused him to shoot the victim nine times. Rather, the evidence merely establishes that the petitioner and the victim had been engaged in a verbal argument over the dice game. Mr. Humphries specifically denied that the altercation between the petitioner and the victim had turned physical. Under Michigan law, words alone generally do not provide adequate provocation to reduce a murder charge to manslaughter. *See Pouncey*, 437 Mich. at 391, 471 N.W.2d at 351; *see also Allen v. United States*, 164 U.S. 492, 497 (1896). In any event, shooting the victim nine times over the game of dice provides sufficient evidence that the petitioner intended to cause the victim's death. The Michigan Court of Appeals did not unreasonably determine the facts in rejecting petitioner's claim that there was sufficient evidence of adequate provocation so as to reduce the charge of second-degree murder to voluntary manslaughter.

The petitioner's argument that there was insufficient evidence to support his conviction for being a felon in possession of a firearm relates to the nature of the disability imposed under state law for certain kinds of criminal convictions. He says the prosecution failed to present any evidence that his prior conviction, which was for carrying a concealed weapon, was a "specified felony" under the felon-in-possession statute or that his right to carry a firearm had not been restored.

In rejecting this claim, the Michigan Court of Appeals stated that the prosecutor and defense counsel entered into the following stipulation: "It is agreed between the parties that at the time of this incident that the defendant had been convicted of a felony and that he was not eligible to either carry or possess a firearm." *Reynolds*, No. 257105, Mich. Ct. App. slip. op. at *4. The court observed that in fact the petitioner's prior conviction for carrying a concealed weapon under Michigan Compiled Laws § 750.227(2) qualified as a specified felony as defined in Michigan

Compiled Laws § 750.224f(6)(iii). *Reynolds*, No. 257105, Mich. Ct. App. slip. op. at *4 & n.21. That court concluded that the stipulation coupled with evidence that the petitioner was in possession of a handgun was sufficient to sustain his conviction for felon in possession of a firearm. *Ibid.*

To prove the offense of felon in possession of a firearm, the prosecution must establish that (1) the defendant possessed a firearm, (2) at the time of possession, the defendant had been convicted of a felony, and (3) no mor than three to five years (depending on the nature of the prior conviction) had passed measured from the pater of release from incarceration, satisfaction of probation or parole conditions, or payment of fines. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007) (citing Mich. Comp. Laws § 750.224f).

Michigan's felon in possession of a firearm statute contains provisions to restore the right of persons convicted of certain felonies to possess firearms upon the fulfillment of specific conditions. The terms of those conditions depend on the nature of the individual's prior felony conviction. Persons convicted of some felonies must only wait three years after completion of their prison sentence, the payment of all fines, and the successful completion of all of the conditions of probation or parole to regain their right to possess a firearm. *People v. Perkins*, 473 Mich. 626, 631, 703 N.W.2d 448, 449 (2005); *see* Mich. Comp. Laws § 750.224f(1). However, for certain "specified felonies," the convict must wait five years after release from custody, and in addition to paying fines and successfully completing parole or probation, and then must apply to and receive permission from the county weapons licensing board to have his right to possess a firearm restored. *Perkins*, 473 Mich. at 631, 703 N.W.2d at 449; *see* Mich. Comp. Laws § 750.224f(2).

The petitioner's stipulation in this case acknowledged that he had not yet removed his disability so "he was not eligible to either carry or possess a firearm." *Reynolds*, No. 257105, Mich.

Ct. App. slip. op. at *4. By entering into a stipulation, a criminal defendant waives his right to assert the government's duty to present evidence to the jury on the stipulated element. *United States v. Harrison*, 204 F. 3d 236, 240 (D.C. Cir. 2000). The petitioner does not deny that he was convicted previously of carrying a concealed weapon. Under Michigan law, the petitioner's concealed weapons conviction is a "specified felony." *See* Mich. Comp. Laws § 750.224f(6)(iii) (defining "specified felony" as a felony that contains an element of unlawful possession or distribution of a firearm); *see also United States v. Williams*, 134 F. Supp. 2d 851, 853 (E.D. Mich. 2001) (holding that a concealed weapons conviction qualifies as a specified felony under Mich. Comp. Laws § 750.224f(6)(iii)). Although the parties did not stipulate specifically that the petitioner's prior conviction was for a "specified" felony, the petitioner's concession that he was "ineligible to carry or possess a firearm" obviated the need to so state.

Lastly, the Court rejects the petitioner's claim that there was insufficient evidence to convict him of the felony firearm charge. Under Michigan law, the elements of felony-firearm are that the defendant possessed a firearm during the commission of, or an attempt to commit, a felony offense. *See People v. Avant*, 235 Mich. App. 499, 505, 597 N.W. 2d 864, 869 (1999) (citing Mich. Comp. Laws § 750.227b). The evidence established that the petitioner committed second-degree murder by shooting the victim with a gun. This claim is therefore without merit.

C.

The petitioner's last claim is that he was deprived of a fair trial because of prosecutorial misconduct when the state prosecutor asked him improper questions about the credibility of other witnesses and argued facts that had not been established by the trial evidence. The state contends the latter argument was waived because the petitioner did not object at trial, as required by state

procedural law. However, the procedural default doctrine is not jurisdictional. *Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Therefore, although the Court would ordinarily resolve the procedural default issue first, "judicial economy sometimes dictates reaching the merits [of a claim] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."). So it is here.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Mich. Dep't of Corrs.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

"To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (quoting *Pitcher*, 117 F.3d at 964). The first question to consider is whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the court must decide whether the improper acts were so flagrant as to warrant relief. *Id*. at 516. Flagrancy depends on four factors: 1) whether the actions "tended to mislead the jury or prejudice the defendant"; 2) whether the actions were isolated or represent a pervasive course of conduct; 3) whether the acts represent a deliberate attempt to affect the outcome of the case; and 4) the overall strength of the case. *Millender*, 376 F.3d at 528.

The petitioner's argument that the prosecutor committed misconduct by asking the petitioner on cross-examination to comment about the credibility of the prosecution witnesses has some support in the jurisprudence. In *United States v. Richter*, 826 F.2d 206, 208 (2d Cir. 1987), for instance, the Second Circuit held on direct appeal that it was plain error for the prosecutor to ask a witness during cross-examination whether an FBI agent "was either mistaken or lying." The court stated that cross-examination was improper because determinations of credibility are for the jury, not for witnesses, and "[p]rosecutorial cross-examination which compels a defendant to state that law enforcement officers lied in their testimony is improper." *Ibid*. The court concluded that reversal was required because the prosecutor compounded the error by calling a rebuttal witness to bolster the FBI agent's credibility and remarking in closing argument that if the defendant was innocent, the FBI agents were lying and committed perjury. *Richter*, 826 F.2d at 208-09.

Michigan law contains similar prohibitions. *See People v. Buckey*, 424 Mich. 1, 17, 378 N.W.2d 432, 439-40 (1985) (stating that it is "'improper for a witness to comment or provide an

opinion on the credibility of another witness since matters of credibility are to be determined by the trier of fact'") (citation omitted). The Supreme Court has not issued an opinion on the subject, however. Moreover, several cases have rejected similar claims from habeas petitioners, finding no violation of the Constitution when a prosecutor in a state criminal trial asks the defendant whether the witnesses were lying. *See Davis v. Burt*, 100 F. App'x 340, 347 (6th Cir. 2004) (prosecutor's cross-examination of a habeas petitioner about whether he thought witnesses were lying or mistaken was not so egregious as to entitle him to habeas relief); *Knapp v. White*, 296 F. Supp. 2d 766, 778-79 (E.D. Mich. 2003) (petitioner failed to show how he was harmed by the prosecutor's improper question to comment on the credibility of a prosecution witness, particularly since his defense was that several witnesses were lying in favor of the prosecution); *Welch v. Burke*, 49 F. Supp. 2d 992, 1005-06 (E.D. Mich. 1999) (although questions to habeas petitioner about the credibility of witnesses may have been improper under state law, the prosecutor's questions did not deprive petitioner of a fair trial under federal constitutional standards).

The Michigan Court of Appeals was critical of the state prosecutor's tactics, but ultimately rejected the petitioner's claim, stating:

> We agree that the prosecutor repeatedly and improperly asked defendant to comment on the credibility of the prosecution witnesses. FN 25. [FN 25: The prosecutor repeatedly asked defendant whether Mr. Humphries was telling the truth when he implicated defendant in the shooting. She further inquired whether Mr. Humphries had any motive to falsely accuse defendant. The prosecutor also asked defendant if there was "any possible reason why" Mr. Humphries and Mr. Harrell would identify him as the shooter.] The prosecutor may not properly ask defendant to comment on the credibility of another witness, as questions of witness credibility are matters for the trier of fact. FN 26. [FN 26: *People v. Buckey*, 424 Mich. 1, 17; 378 N.W.2d 432 (1985).] This inquiry was improper and the trial court sustained defense counsel's objection. However, in light of defendant's general denial of the evidence against him, this inquiry did not affect the outcome of his trial.

*Reynolds*, No. 257105, Mich. Ct. App. slip. op. at *5.

This Court finds that the state court's holding on this issue was not contrary to or an unreasonable application of Supreme Court precedent. In fact, the petitioner was the one who introduced the issue of witness credibility. He testified on direct examination that several of the civilian and police witnesses had testified untruthfully and that, in fact, he was never present at the scene of the crime. Therefore, the prosecutor's questions on cross-examination about whether or not these prosecution witnesses had a reason to testify falsely did not deprive the petitioner of a fair trial so as to entitle him to habeas relief. *Knapp*, 296 F. Supp. 2d at 778-79.

The petitioner's argument that the prosecutor acted improperly when he argued facts that had not been introduced into evidence also finds support in the record. However, the Michigan Court of Appeals ruled that because defense counsel failed to object to the prosecutor's closing argument, its review of that issue would be limited to determining whether plain error affected the petitioner's substantial rights. *Reynolds*, No. 257105, Mich. Ct. App. slip. op. at *4. Finding none, that court rejected these prosecutorial misconduct claims. *Id.* at *5-6. The court stated:

> We also agree that, during closing argument, the prosecutor improperly argued certain facts that were not placed into evidence. A prosecutor enjoys wide latitude in fashioning arguments, but may only argue the evidence and all reasonable inferences arising from it. FN 27. [FN 27: *People v. Schutte*, 240 Mich. App. 713, 721, 613 N.W.2d 370 (2000).] Defendant challenges the following statement from the prosecutor's closing argument:
>
>> Now, if you listen to [defendant's] testimony everyone collectively have gotten together on a story to place him there. How can that be? The police talked to Andre Harrell or Blue, Leonard Glover, the neighbor Ronald Collins on the 22nd right after this happens. They all give police the information that it's, who are they're [sic] looking for, they're looking for Tez and who they think is his cousin, "H", 'cause they weren't sure what the relationship was between Tez and Harrison Humphries at the time. They all thought they were cousins. Turns out the[y] were just best friends.

> The prosecutor presented no evidence regarding the content of any statements made by Mr. Glover and Mr. Collins. Furthermore, although Mr. Harrell testified at defendant's preliminary examination that he believed that the defendant and Mr. Humphries were related, the prosecutor did not elicit this testimony at trial. The prosecutor also improperly mischaracterized defendant's testimony regarding his alibi defense. Defendant merely stated that he was with his girlfriend and her sister at the time of the shooting. Yet, the prosecutor argued that defendant failed to provide corroborating evidence that he took a cab to her house that day. However, none of these errors warrant reversal. Whether defendant and Mr. Humphries were best friends or cousins was not a material fact in this case. The trial court had previously sustained the defendant's objection when the prosecutor attempted to infer that Mr. Glover or Mr. Collins implicated him in the shooting. Moreover, had defendant objected to any of these arguments, a timely instruction could have cured any potential prejudice. FN 28. [FN 28: *Id.*]
>
> Defendant also challenges the prosecutor's argument that Detroit Police Officer Matthew Gnatek contacted homicide detectives and confirmed that they were "looking for [defendant]" for a "murder on Annin." However, this argument was supported by the record evidence. Officer Gnatik testified at trial that he contacted homicide to confirm the information provided by the unidentified tipster who volunteered information implicating defendant in the shooting. Although the substance of the officer's conversation with the homicide detective was not placed into evidence, evidence had already been presented to the jury that defendant had been identified as a suspect in this case. The prosecutor was free to make this connection in her arguments.

*Reynolds*, No. 257105, Mich. Ct. App. slip. op. at *5-6.

This Court agrees with the Michigan Court of Appeals' reasoning and concludes that, albeit improper, the prosecutor's comments regarding Mr. Glover and Mr. Collins's statements and the relationship between the defendant and Mr. Humphries were not so flagrant as to require reversal. *United States v. Galloway*, 316 F.3d 624, 632 (6th Cir. 2003) (assessing the flagrancy of improper statements during closing by looking at four factors: "1) whether the statements tended to mislead the jury and prejudice the defendant; 2) whether the statements were isolated or pervasive; 3) whether the statements were deliberately placed before the jury; and 4) whether the evidence against the accused is otherwise strong"). The remarks were isolated and were not part of a pattern of

improper argument by the prosecuting attorney. There is no evidence that the prosecutor made the two remarks with intent to prejudice the defendant. *Id*. at 633. Rather, they seem to be a result of "unduly-zealous advocacy." *United States v. Shalash*, 108 F. App'x 269, 281 (6th Cir. 2004). With the exception of two improper statements, the state's closing argument was based on the evidence properly admitted at trial. And that evidence was sufficient to support the petitioner's convictions. Moreover, the court instructed the jury that they "may only consider the evidence that has been properly admitted in this case . . . [such as] sworn testimony of the witnesses, the exhibits that were admitted as well as the stipulation that was entered into by the parties," and not the "lawyers' statements and arguments." Tr., 7/12/04 [dkt. # 13], at 44. The jurors are presumed to follow such instructions. *Cyars v. Hofbauer*, 383 F.3d 485, 493 (6th Cir. 2004). When evaluated in the context of the entire trial, the prosecutor's improper conduct did not render the petitioner's convictions constitutionally infirm.

This Court also agrees with the state court of appeals's conclusion that the prosecution's comment regarding Officer Gnatik were proper. The prosecutor's statement suggested that at the moment Officer Gnatik contacted the Detroit Police Department's 12th Precinct, the petitioner was suspected of the murder on Annin street. That comment was fair: the evidence admitted at trial suggested that the petitioner was a suspect in the case. *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005). The prosecutor's comment was not improper.

### III.

The petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**..

-19-

s/David M. Lawson
				DAVID M. LAWSON
				United States District Judge

Dated: July 27, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 27, 2010.

				s/Teresa Scott-Feijoo
				TERESA SCOTT-FEIJOO